Stapleton v. King.

---

STAPLETON v. KING *et el.*

1. **Evidence: PAROL TESTIMONY: RECEIPT.** While parol evidence is admissible for the purpose of explaining a receipt, this exception to the general rule, respecting the inadmissibility of such evidence to vary the terms of a written instrument, must be strictly confined to instruments which are purely receipts, and will not be extended to an instrument which embraces or is in its nature a contract.

Stapleton v. King.

2. Partnership: JOINT CONTRACTS. Where two persons entered into a contract jointly, for the keeping of sheep for certain shares of the wool, it was *held*, that they would be so far regarded as partners as that a settlement made by one of them, in the name of both, would bind both.

*Appeal from Johnson District Court.*

THURSDAY, DECEMBER 14.

THE plaintiff alleges in his petition that the defendants entered into a written contract with plaintiff and Josiah Thompson, by which plaintiff and Thompson delivered to defendants 354 head of sheep, which defendants agreed to take good care of, to keep up the number of the flock, and to deliver to plaintiff and Thompson, annually, at shearing time, two pounds of well washed wool per head. That, for the years 1865, 1866, 1867, 1868 and 1869, the defendants failed to deliver wool, according to the terms of their agreement, on account whereof they are indebted in the sum of $1,200. That said contract, and all due thereon, was assigned by Thompson to plaintiff on the 23d day of December, 1868.

The defendants, for answer, deny that there is due from them, for failure to deliver wool, as alleged, the several sums claimed. By way of counter-claim, they allege that the sheep were warranted sound; that they were affected with scab, by reason whereof they have sustained damage in the aggregate amount of $3,000. For this they pray judgment. The replication denies the warranty, and alleges that all claims for damages, on account of the alleged disease of the sheep, had been fully settled. As evidence of this settlement, the plaintiff attached to his petition, and introduced in evidence, a receipt as follows:

"Received of Pearson A. King and John Porter, two hundred and sixty-five pounds of the wool due on one hundred and seventy-seven of the sheep said King and

Stapleton v. King.

Porter got of us, on joint contract, the fall of 1864. And the abatement thus made is to settle all difficulty of alleged disease in said sheep.

"DAVID STAPLETON,
"For STAPLETON & THOMPSON."

A copy of the receipt was retained by Stapleton, to which was attached the following statement:

"The above is a true copy of a receipt taken of David Stapleton and Josiah M. Thompson, as dated above.

"PEARSON A. KING,
"JOHN PORTER."

It was shown that the name of Porter was attached to this statement by Pearson A. King. Evidence was introduced tending to show that King refused to sign the statement; and, that Stapleton said it was only a receipt; and, that a copy could not, and should not, prejudice his rights; that he only wanted it to show how much wool he got; and, that nothing was said at that time about a settlement. The written agreement of the parties was introduced in evidence, and it sustains, substantially, the averments of the petition with reference thereto. The court instructed the jury that the contract is joint; that defendant, King, had authority to make the subsequent contract, or to receive and accept what is called the receipt, of the date of September 23, 1865, and, by that act, bind Porter, whether Porter assented to it or not; and, that any statement made orally, by either party, at the time of, or before the delivery of the paper containing said settlement, as to reservation of legal rights, or other verbal statements or stipulations, cannot be considered. The court refused to give, at the request of the defendant, instructions involving the contrary of the above doctrine.

The jury returned a verdict for plaintiff for $95.23. Motion for new trial was overruled. The defendant ap-

peals, and assigns for error the giving of the instructions above referred to, and the refusing to give those asked.

*Clark & Haddock*, and *Templin & Son* for the appellant.

*Fairall, Boal & Jackson, Edmonds & Ransom* for the appellee.

DAY, Ch. J.—The principal question involved in this case is, whether the exhibit attached to the defendant's answer, and by counsel denominated a receipt, a writing, and a contract, may be explained by parol testimony, by showing what occurred at the time of its execution. The rule is well settled that parol contemporaneous evidence is not admissible for the purpose of explaining, varying or adding to, a valid written contract, but that a simple receipt may, by such testimony, be explained and even contradicted. The only difficulty in the case is to determine to which class the writing in question belongs. Appellant insists that it is subject to explanation by parol proof, and cites numerous authorities, which, however, do no more than sustain the general proposition that a receipt may be explained, and, hence, afford but little aid in the solution of the question involved.

1. EVIDENCE: parol testimony: receipt.

The nature of this instrument can best be determined by a comparison of it with others which have received judicial construction. In *Van Ostrand* v. *Reed*, 1 Wend. 424, it was held, that where a party, on the sale of an article, makes representations amounting to a warranty, and the sale is consummated by a written transfer, without warranty, the writing is presumed to contain the entire agreement, and parol evidence, as to the warranty, is not admissible. In *Creery* v. *Holly*, 14 Wend. 26, where a clean bill of lading was given, it was held that parol evidence is not

admissible to prove an agreement, that the goods might be stowed *on deck*, it being conceded that the general usage requires goods to be stowed under deck in the absence of agreement. In *Kellogg & Dumont* v. *Richards & Sherman*, 14 Wend. 116, where, upon a compromise being made, the creditor indorsed upon a note he held against his debtor, that he had received the note of a third person, as a compromise for the *full payment of the note* of his debtor, and afterward brought an action against his debtor, and offered to prove that, at the time of the compromise, the debtor *verbally agreed* to make a further payment, in addition to the note transferred, so as in the whole to pay one dollar in the pound, it was *held*, that such evidence was inadmissible, as varying the written agreement between the parties. In this case the court said :

" That a technical receipt can be explained by parol evidence, and is, in this respect, an exception to the general rule of evidence applicable to written instruments, has been repeatedly ruled and acted upon by this court.     *     *     *
The relaxation of the rule of evidence, above referred to, should not be extended beyond the spirit of the terms in which it is expressed, and must be confined to the case of a receipt in the strict sense of that term."

In *May* v. *Babcock*, 4 Ham. 347, salt was shipped upon a vessel, and a bill of lading was executed for the transportation of the same, by the most direct route, from Buffalo to Cleveland. The vessel deviated from the direct route, and the salt was lost. Defendants sought to avoid the effect of the bill of lading by parol proof, that it was part of the agreement that the schooner might touch at Otter Creek, a place out of the regular course. The court said:

" That a receipt may be explained by parol evidence is a principle too familiar to require authority for its support. The bill of lading is a contract, including a receipt. It is a contract admitting the reception of certain goods, with an agreement to carry them to the port of discharge, and the

only doubt in the case is whether the terms of this agreement, as reduced to writing in the bill of lading, can be varied by parol. If the actual reception of the salt by the master was the point in controversy, a different question would be presented. Such a case might come within the general rule of law, applicable to all receipts. But, in this case, it is agreed by all parties that the salt was actually received by the defendants or their agent, and the only question is, whether the agreement for the transportation of the salt can be changed by parol testimony." And it was held that it could not be so changed.

In *Stone* v. *Vance*, 6 Ham. 246, an instrument of the following form was involved:

" Received, Dayton, January 6, 1830, of Jacob L. Vance, a note, signed by himself, Abraham Harrison, and Reuben Pore, payable at the Franklin Bank, of Columbus, in four months from January, 1830, for $600, which note, if discounted at said bank, $500 is to be applied to said Vance's credit, with the late firm of Stone & Bostwick."
In construing this instrument the court said:

" It is claimed that this paper, executed at the time between the parties, is to be considered as their entire contract, in relation to the note; that it cannot be enlarged, restrained, contradicted nor varied by parol testimony of any agreement made *before* or at the time of its execution, unless there is some latent ambiguity. This is, in our view, a well-settled principle, and one which ought not to be overthrown."

In *Barber* v. *Brace*, 3 Conn. 9, where the master of a vessel gave to the shipper of goods a writing acknowledging the receipt, and stating that they were to be transported to the place of destination at customary freight, dangers of sea excepted; it was held that a parol agreement between the shipper and master, before and at the time of giving the writing, as to the mode of stowing the goods, was inadmissible to show the terms of the ship-

ment, as all such considerations are to be considered as merged in the writing. Sustaining this view see, also, Phillips on Evidence, Cowen, Hills and Edwards' notes, p. 391, No. 131.

In *Miles* v. *Culver*, 8 Barb. 207, an instrument in the following form: "Received in store, on account of Ira D. Richmond, from Justice NILES, two hundred and forty-five barrels of apples, to forward to New York, at forty-four cents per barrel, and advanced ten dollars and cartage," was held to constitute a contract, and to contain all the stipulations of the parties, and that parol evidence was not admissible to add thereto. In *Goodyear* v. *Ogden & Pearl*, 4 Hill, 104, an instrument in form as follows: "Genoa, Sept. 22, 1841. Received of Ives Goodyear, 40 $\frac{10}{60}$ bushels wheat *in store*," was held to constitute a contract of bailment, and that parol evidence was not admissible to prove a sale. Sustaining the same view, see *Wakefield* v. *Steadman*, 12 Pick. 562; *Bursley* v. *Hamilton*, 15 id. 40.

These cases show how cautious courts have been in extending the exception to the rule inhibiting parol evidence for the explanation or contradiction of a written instrument. The writings construed in many of those cases partake less of the nature of a contract than does the instrument in question in this case. The writing involved in this case acknowledges the receipt of a less quantity of wool than that due, and stipulates that an abatement of the remainder has been made. Certainly this stipulation as to abatement constitutes a contract, binding upon the party making it. But the instrument goes further, and specifies the consideration of this abatement; it "is to settle all difficulty of alleged disease in said sheep." It is not claimed that the wool was not received, or that the quantity received differed from the amount stated; evidence to establish these facts would be admissible. It is conceded that the quantity of wool

specified in the receipt was delivered, and that it was received in lieu of a greater amount then due. Defendants admit the stipulation upon the part of plaintiffs, and seek to prove by parol that they did not enter into the agreement which constitutes the consideration of the stipulation of plaintiffs. To allow this to be done would be a direct violation of the principles of the authorities cited, and an infraction of a well-established and salutary rule of law. We conclude, therefore, that the court did not err in instructing the jury that they could not consider any verbal statements or stipulations made before or at the time of the delivery of the paper in question.

II. As to the authority of Pearson A. King, to bind his co-defendant, Porter, by his acceptance of the writing in question. Of this we entertain no doubt. The contract for the keeping of the sheep was made with them jointly. Afterward they divided the sheep, each one taking one-half under his immediate charge. But they could not then, by their own acts, without the concurrence of plaintiffs, make that two distinct agreements, which they contracted with plaintiffs should be but one. If the defendants then had brought an action against the plaintiffs for a breach of their contract, it would have been necessary for them to join in the action. And where several plaintiffs must join in bringing a personal action, a release by one joint plaintiff is a bar to the action. *Austin* v. *Hall*, 13 Johns. 286; *Decker* v. *Livingston*, 15 id. 478; *Myrick* v. *Dame*, 9 Cush. 248. Besides, Porter is accepting the benefits of this agreement, so far as it exonerates him in part from his agreement to deliver two pounds of wool per head of sheep. Upon what principle can he accept its benefits, and be discharged from its burdens. The case mainly relied upon by appellant, in opposition to the right of King to bind Porter is, *Banchor* v. *Cilley, Ex'r*, 38 Me. 553. Cilley and Carey were keeping a hotel.

*2. PARTNERSHIP: joint contract.*

Cilley, in the presence of Carey, made a purchase of liquors on their joint account on credit. Cilley having deceased, an action was brought against his executor for the price of the liquors. The defendant contended that Cilley and Carey were partners and that the action should have been brought against the survivor. It was held that they were not necessarily partners as between themselves, and that as plaintiff did not seek to charge them as partners, it was not necessary to decide whether they might be regarded as partners as to third persons. To this it may be replied, first: That a partnership is not necessary, in order to enable one party to release a right of action, which shall be binding upon another. That a mere joint contract is sufficient for that purpose. Second. That the case does not decide that the parties were not partners as to third persons.

The instruction that the contract is joint, and that King had authority to make the subsequent contract, and accept what is called the receipt, and by that act bind Porter, is, in our opinion, proper.

Affirmed.