ALLEY, GREENE & PIPE COMPANY, Appellee, v. THORNTON
CREAMERY COMPANY et al., Appellants.

**FACTORS:** Duties—Presence or Absence of Directions as to Sale. Fac-
1   tors *must* comply with specific directions as to time of sale. In the
absence of such directions, they *must* sell within a reasonable time.

**EVIDENCE:** Opinion Evidence—Custom—Competency. The general
2   custom of factors in handling goods is provable by any witness
familiar therewith.

**TRIAL:** Instructions—Oral Statements to Jury. Material statements
3   of fact must not be orally given to the jury. (See Book of Anno.,
Vol. 1, Sec. 11493, Anno. 164 *et seq.*)

**Headnote 1:** 25 C. J. p. 366. **Headnote 2:** 17 C. J. p. 521. **Head-
note 3:** 38 Cyc. p. 1766.

*Appeal from Cerro Gordo District Court.*—M. F. EDWARDS,
Judge.

MARCH 16, 1926.

ACTION to recover overpayment on a shipment of butter.
From a judgment on the verdict of the jury in favor of the
plaintiff, the defendants appeal.—*Reversed.*

*Garfield E. Breese,* for appellants.

*Marty, Butler & Thompson,* for appellee.

ALBERT, J.—The appellants conduct a creamery at Thorn-
ton, Iowa. Between September 18 and October 9, 1920, they
shipped to appellee 102 boxes of butter, containing approxi-
mately 5,500 pounds, appellee being a factor
conducting a commission house in Boston, Mas-
sachusetts. This butter was placed in cold
storage by appellee, and was not sold until May,
1921. When each shipment was made by appellants, they drew
by sight draft on appellee, and by this means received from
appellee the sum of $2,342 on four shipments. The net amount
received from the sale of the butter, after deductions were made
by appellee for freight, storage, and commission, was $1,092.92.

1. FACTORS: du-
ties: presence
or absence of
directions as to
sale.

This action was commenced to recover from the appellants the overpayment in the sum of $1,249.08, with interest.

When the butter was shipped, no instructions were given appellee as to the time sale was to be made. On the 20th of October, appellee wired appellants:

"Butter not sold. Market here dull, 47 to 50 cents. Wire if you want us to sell best price possible or hold."

On October 26th, appellants wired, expressing their surprise that the butter was not sold, said that they did not care to sell at present price, and felt that they should have 58 cents net. They closed with:

"We feel that you are better posted than we are, however, and we will ask you to use your own judgment and do the best you possibly can for us."

On December 11th, appellee wrote appellants that the butter was still unsold, that the market was down around 40 cents, and that it was doubtful if it would advance. On the same day, appellants replied:

"New York market is up again so I think best to hold it, but any time you think the market has reached the top sell it, but we must have more than 40 cents for it."

On December 29th, appellants wired appellee:

"As market seems to be steady at the present time wish you would sell and send return."

On January 8th, appellee wrote appellants that, while the market was steady on fine-grade butter, there was little demand for under-grade stock, particularly for cubes. The buyers would have absolutely nothing to do with them as long as they could get tubs, and the cubes were neglected at 40 cents. This seems to be the end of communication between the parties until May, when the butter was finally sold at from 24 to 30 cents a pound. This is but a brief summary of the facts, but sufficient for the purpose of the questions raised.

The court instructed the jury, in substance, that, in the absence of instructions or agreement as to the manner or terms of sale, the commission merchant is at liberty to sell at such time, in such manner, and on such terms as he may deem proper, in the exercise of sound discretion; that he will incur no liability, where he acts in good faith and without negligence, for

loss arising from his erroneous judgment, if any; that the appellee was authorized to control the sale of said butter shipments according to its own judgment, and if, in its best judgment, while acting in good faith in the matter, owing to the market conditions appellee deemed it advisable to hold said butter for a higher market, then it was authorized so to do, and to care for said butter as in its judgment would seem to be for the best interests of the shipper. If, in so doing, it honestly appeared to appellee that said butter should be placed in cold storage and held for better market at a later date, then appellee would be within its rights in so doing, unless it had received instructions to the contrary from the appellants; that, if the appellee had established the above matters by the greater weight of evidence, then it was entitled to recover. This was the theory of appellee in the case, and the theory on which the case was submitted to the jury. Appellants insist that this theory is wholly wrong, under the facts in the case, and we are disposed to agree with them. There seem to be three reasons why this theory was not applicable to the facts before the court. In the first place, appellants pleaded, and claimed by their testimony, that the shipments were made under an agreement with one Bickel, who, it is conceded, was the local agent of the commission house, as to the time and manner of sale. This claim was wholly overlooked in the instructions. Second, the court wholly ignores the instructions contained in the communication of December 29th, in which there was a definite order to sell the butter and send returns. Third, the court wholly ignores the duty of the commission merchant, or factor, which is, in the absence of instructions, to sell the consignment within a reasonable time. Whether or not the sale was made within a reasonable time is wholly a question of fact for the jury. The appellee insists that these questions are not covered by the assignment of error; but, while they are not very artistically stated, we feel that they are raised by the brief points and assignments of error. It is true that the law is quite well settled on the proposition that, in the absence of specific instructions, the time of sale is a matter within the sound discretion of the factor, yet this has a limitation, wholly ignored by the court, which requires the factor to sell the goods within a reasonable time; and

he is liable for damages resulting from any unnecessary delay. 25 Corpus Juris 365, Section 47, and notes. On the other hand, appellants counterclaim for damages, and, in spite of this counterclaim, the court instructed the jury as above indicated. The letter of December 29th was a definite and certain instruction to the appellee to sell the butter and remit. It was the duty of the appellee, therefore, to promptly respond to this order, and dispose of the butter at whatever price could be had for the same. Instead of doing this, however, appellee carried it, as above indicated, until May following. The law is too well settled to require citation of authority that, where a factor, under such circumstances, receives imperative instructions to sell, it is his duty to follow those instructions; and if his failure so to do produces a loss, he must respond in damages for such loss. This seems to be the general rule of all the courts. While the Supreme Court of Iowa seems not to have passed on it, the holding is so uniform that we do not stop to cite authority. Such authority may be found collated in 25 Corpus Juris 359, Note 38 1/3.

Complaint is made of the admission and rejection of testimony. What we have heretofore said will govern some of these matters; but it might be said in addition that, where it is sought

2. EVIDENCE: opinion evidence: custom: competency.

to establish the usual custom of commission houses or factors in handling goods of this kind, any person who knows what that custom is, will be a competent witness to testify to such custom.

One other point is raised, and that is that, after the instructions had been read to the jury, one of the jurors asked whether the sale was actually made in May or June. The court orally

3. TRIAL: instructions: oral statements to jury.

told the juror that it was made in May. This was of some materiality in the case, and the court, if it wished to advise the jury, should have put such advice into a written instruction. Section 11493, Code of 1924.

For the errors above pointed out, the case is reversed.— *Reversed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.