FRED M. BLANCHARD, Appellee, v. ELMER WOOD COMPANY, Appellant.

**FACTORS: Liability—Failure to Obey Instructions.** A commission merchant is excused from all liability for failure to sell goods on the terms prescribed by the principal when such failure was because of conditions over which he had no control.

**FACTORS:** **Liability—Belated and Unexplained Sale at Low Price—**
2 **Effect.** A sale by a commission merchant at an extremely low
price, and on a steadily falling market, and after a long and unex-
plained delay, may be sufficient to present a jury question on the issue
of negligence.

**FACTORS:** **Liability—Shortage in Shipment—Burden of Proof.** A
3 commission merchant, in an action against his principal for a balance
due for advances, must adequately account for all goods consigned to
him.

Headnote 1: 25 C. J. p. 360. Headnote 2: 25 C. J. p. 408. Head-
note 3: 25 C. J. p. 407.

Headnote 1: L. R. A. 1918F, 18; 11 R. C. L. 766.

*Appeal from Appanoose District Court.*—W. M. WALKER,
Judge.

JULY 1, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Plaintiff, a commission merchant located at Boston, Massa-
chusetts, brings this action to recover advances, commissions,
and expenses on a consignment and sale of a quantity of wool.
The court directed a verdict for the plaintiff, and the defend-
ant appeals.—*Reversed.*

*H. E. Valentine,* for appellant.

*T. G. Fee,* for appellee.

STEVENS, J.—I. Appellee is a commission merchant in the
city of Boston, to whom appellant, by various shipments in July
and August, 1919, consigned for sale on commission 69,651
1. FACTORS: liabil-  pounds of wool. Appellee's account sales show
ity: failure to   the sale of 64,685 pounds, leaving, as appellant
obey instruc-
tions.            claims, unaccounted for, 4,966 pounds. Recov-
ery is asked for $6,756.46, with interest. This amount is made
up of advancements, commissions, and expenses of freight, in-
surance, transportation charges, and storage. Appellant in its
answer admitted all of the items of the account, but alleged
that, because of the negligent and careless manner in which the

wool was handled, appellee is not entitled to recover; and, by way of counterclaim, asked damages in the sum of $20,000 for the failure of appellee to sell the wool as directed, and on account of his negligent failure to sell the same upon a falling market at an earlier date, and for the shortage in quantity. By way of reply, appellee set up ratification of the sales, and, in effect, denied all of the allegations of the counterclaim. The counterclaim is not separated into counts, but, as stated, recovery is sought for the several separate items indicated.

At the conclusion of the evidence, the court, on the motion of appellee, struck from the record all of the evidence offered in support of the counterclaim, and directed a verdict for appellee for the full amount asked, with interest. The ground upon which these motions were sustained was the absence of sufficient evidence to sustain appellant's allegations of negligence in the handling of the wool and the failure to follow instructions to sell, and of competent proof on the measure of damages.

All of the wool, except two sacks, was shipped from Moulton, Iowa, to appellee in July, 1919. Prior to the first shipment, appellee wrote appellant as follows:

"I should expect to secure on the ⅜ similar to last year's about $1.25 a lb. clean, Boston, which would mean about 62c grease. On the ¼ - Blood, I should expect to secure a basis of $1.05 all around, or about 57c grease."

Advancements of considerable sums were made to appellant from time to time, and, as we understand the record, the first sale, which was of six bags, was on November 1, 1919, and the last, which was of two bags, on December 22, 1921. On June 18, 1920, appellee reported that he probably could sell the balance of the wool, about 27,000 pounds, on that date at 57 cents a pound, and asked directions. Appellant immediately replied by wire, as follows:

"Sell at indicated price and clean up."

Ordinarily, a commission merchant disobeys at his peril the imperative direction of his principal to sell. *Durant & Cutting v. Fish*, 40 Iowa 559; *Alley, Greene & Pipe Co. v. Thornton Cr. Co.*, 201 Iowa 621. If, however, the factor, by the exercise of proper skill and diligence, is unable to sell at the price or on the terms fixed, he is absolved from liability. On

June 24th, appellee reported that, on account of stress in the financial situation, he could give no assurance that appellant's directions could be complied with, but that he would do all in his power to close the transaction. Later,—date not shown,— appellant again wired appellee, as follows:

"By making concession in price, can you not clean up?"

On October 14th, appellee wrote appellant in response to this telegram, explaining that he had been unable to sell the wool, and referring for the second time to the unfavorable financial conditions. Without further correspondence or communication, appellee, on December 12, 1921, reported that he had sold the balance of the wool, and inclosed a final account of the sale. The price received was 27 cents a pound. No other testimony was introduced by appellant on this point. It seems to us that, in the absence of other testimony, the documentary evidence introduced tends to show that the failure to sell the wool at 57 cents a pound was due to conditions over which appellee had no control. This being true, he was excused, and is not liable on this count of the counterclaim. Appellee made it plain that he might not be able to sell at the indicated price. The proposition was tentative, and subject to conditions, which were also stated. The directions were imperative, but compliance therewith was excused by the condition of the market and prevailing financial conditions by which it was affected.

II. A commission merchant is bound to exercise a reasonable degree of care, skill, and diligence in his business, and to deal fairly and honestly with his principal. He is not, however, an insurer, nor held to the highest degree of care. Much must necessarily be left to his judgment and discretion, in the absence of specific directions. It is contended by appellant in this case that appellee failed to exercise that degree of skill and fidelity in handling the wool that he was bound to observe toward his principal. If his failure was, at all events, due to adverse conditions in the market or to financial disturbance over which he had no control, and a sale could not have been effected at a better price, even by the exercise of skill and care required, he cannot be compelled to respond in damages. As stated, all but two sacks of the wool was shipped in July, 1919. There was, therefore, a delay of considerably more than two

2. FACTORS: liability: belated and unexplained sale at low price: effect.

years in the sale of something like 27,000 pounds, which was finally made at an extremely low price, without consultation with appellant or advice or directions from him of any kind. The evidence as to the wool market during the period covered is not at all satisfactory. Appellant testified that, in July, 1919, and the spring of 1920, the trend of the market on half-blood wool in Boston was probably 72 to 75 cents, and on ⅜ blood, probably 70 to 72 cents, and on quarter blood, probably 62 to 65 cents. This is all of the evidence introduced on the subject. The long delay in the sale of the wool after June 20, 1920, without other explanation or excuse than we have already shown, would seem to be sufficient to justify submission of the question of negligence to the jury. Evidently, the market was steadily declining.

Justice Strong, in *Feild v. Farrington,* 10 Wall. (U. S.) 141 (19 L. Ed. 923), speaking on this subject, said:

"Whether this long delay, in view of a falling market, was in the exercise of a sound discretion, good faith, and reasonable diligence, was a question that should have been submitted to the jury."

To the same effect, see *Roberts v. Cobb,* 76 Minn. 420 (79 N. W. 540) ; *Justice v. Brock,* 21 Wyo. 281 (133 Pac. 1070).

The facts, if any, which justified the long delay and avoided liability on his part were peculiarly within the knowledge of appellee. He chose not to disclose them to appellant. The case made by appellant is not a strong one, but we think the evidence was sufficient to justify the submission of the issue of negligence to the jury.

III.   No effort was made by appellant to account for the shortage of nearly 5,000 pounds in the wool. It was developed upon the cross-examination of Wood that there would naturally be some shrinkage in the wool. The extent thereof would necessarily depend to some extent upon the conditions causing it. The court could not take judicial notice thereof. It was the duty of appellee to account for all of the wool received. There is no dispute in the evidence as to the number of pounds consigned, and, clearly, full recovery should not be permitted upon an account of sales which shows a shortage as large as 5,000 pounds. Appellee must account for all of the wool consigned.

3. FACTORS: liability: shortage in shipment: burden of proof.

If such shortage was due wholly or in part to shrinkage, that fact should appear. The court cannot say, as a matter of law, that appellee exercised the degree of skill and diligence required, or that the shortage shown is attributable wholly to shrinkage.

Several rulings of the court on the admissibility of evidence are complained of. They are not likely to arise upon a retrial, and we shall not discuss them. We conclude that the court erred in striking the testimony offered by appellant in support of its counterclaim, and in directing a verdict in favor of the plaintiff upon the issues indicated. In reaching this conclusion, we have not overlooked the unsatisfactory state of the record with reference to the measure of damages.

The judgment of the district court must be, and it is, reversed.—*Reversed.*

EVANS, C. J., and FAVILLE, ALBERT, and KINDIG, JJ., concur.

MORLING, J., takes no part in the decision of this case.